Timothy H. CLARK, Petitioner,

v.

Barry McLEMORE, Respondent.

No. 02–40134.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 14, 2003.

Timothy Clark, Lapeer, MI, Pro se.

Raina I. Korbakis, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Barry McLemore, Warden, respondent.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

#### I. Introduction

Petitioner Timothy H. Clark is a state inmate currently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan. He has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his state court convictions for first-degree murder and felony firearm. For the reasons set forth below, the Court denies the petition.

#### II. Procedural History

Following a bench trial in Recorder's Court for the City of Detroit, Petitioner was convicted of first-degree murder, felony murder, and felony firearm. Petitioner was tried jointly with co-defendant Samuel Moore. On May 21, 1991, Petitioner was sentenced to life imprisonment for the first-degree murder and felony murder convictions, and two years imprisonment for the felony firearm convictions.

Petitioner filed an appeal in the Michigan Court of Appeals, presenting the following claims: insufficient evidence to sustain the first-degree murder and felony murder convictions, inadequate findings of fact in the trial court to support his convictions, a violation of the right of confrontation, and a violation of the guarantees against double jeopardy by convictions for both first-degree murder and felony murder. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences for first-degree murder and felony firearm, and vacated his conviction and sentence for felony murder. *People v. Clark*, No. 144132 (Mich.Ct.App. Apr. 13, 1994).

Petitioner filed an application for leave to appeal to the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals, with two additional claims: ineffective assistance of trial counsel and ineffective assistance of appellate counsel. The Michigan Supreme

Court denied leave to appeal. *People v. Clark*, No. 99875 (Mich. Oct. 28, 1994).

Thereafter, Petitioner filed a motion for relief from judgment in the trial court, presenting the following claims: ineffective assistance of trial counsel, ineffective assistance of appellate counsel, violation of the right to due process, denial of a fair trial, and the cumulative effect of alleged errors. The trial court denied the motion for relief from judgment. *People v. Clark*, No. 90–012204 (Wayne County Circuit Court May 19, 2000). Petitioner filed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and the Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Clark*, No. 234355 (Mich.Ct.App. Sept. 13, 2001); *People v. Clark*, 466 Mich. 855, 643 N.W.2d 575 (2002).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims: inordinate and inexcusable delay in responding to his post-conviction motion, denial of his constitutional right to the effective assistance of trial counsel, denial of effective assistance of appellate counsel, denial of a fair and impartial trial by a fair and impartial finder of fact, and the cumulative effect of alleged errors.

This Court ordered Respondent to file an answer to the habeas corpus petition on or before August 15, 2002. Respondent failed to do so. Instead, Respondent filed a motion to enlarge the response time on August 16, 2002. Because Respondent failed to show excusable neglect for missing the filing deadline, the Court denied Respondent's motion for an extension of time on August 19, 2002. Respondent filed a Motion for Leave to File Answer *Instanter* on September 27, 2002, and attached a "Motion to Dismiss for Failure to Comply with the Statute of Limitations."

The Court denied the Motion for Leave to File Answer *Instanter*, and ordered that the untimely Motion to Dismiss not be accepted for filing. *See* Order, filed November 7, 2002. The Court held that the petition for a writ of habeas corpus would be considered without reference to any untimely pleadings. *Id.* Further, the Court ordered Respondent's untimely Notice of Filing of Rule 5 Materials and Index of Record stricken. *Id.*

### III. *Facts*

Petitioner's conviction arises out of the shooting death of Samuel Keith Moore (Keith) on October 26, 1990, in Detroit. The victim was not related to co-defendant Samuel Augustus Moore (Samuel). To avoid confusion and since several witnesses refer to the victim as Keith, the Court will refer to the victim as Keith and the co-defendant as Samuel. Petitioner and co-defendant Samuel both worked for Keith at Moore Truck and Trailer Rental.

Harry Ayres testified that he went to Moore Truck and Trailer Rental on the morning of October 26, 1990. No one appeared to be working behind the counter. After Mr. Ayres rapped on the plexiglass several times, he decided to enter the work area through the employee entrance. When he entered the employee area, Mr. Ayres saw blood on the floor. He advised his fiancee to run across the street to call 911. He proceeded to enter the work area and found Keith lying on the floor. By stipulation, the autopsy report was entered into evidence. The report indicated that Keith Moore died from two gunshot wounds to the head.

Police Sergeant Charles Davis testified that he arrested Timothy Clark and Samuel Moore separately on October 27, 1990, in connection with the shooting of Keith Moore. After being advised of his constitutional rights, Samuel stated, "I really

feel bad about that happen[ing]. I didn't kill him, Tim did." Tr. 5/1/91, p. 49. The trial court overruled a defense objection from Petitioner's attorney and allowed the testimony to be admitted against Samuel only.

Sergeant Ronald Sanders testified that, on October 27, 1990, after advising Petitioner of his constitutional rights, he took a statement from Petitioner. Sergeant Sanders testified that Petitioner stated that he went to Keith's business on October 26, 1990, to discuss wages that Petitioner claimed Keith owed him. Petitioner and Keith began arguing. Keith stood up and placed his hands inside his coat. Petitioner stated that he knew the victim carried a gun, so, when he saw Keith reach into his coat, Petitioner tried to leave, but the door was shut. Petitioner stated that he was scared when he found the door shut. He then pushed Keith to the side, and shot him with his own .25 caliber handgun. Petitioner further stated that, after he shot Keith, Samuel entered Keith's office. When Samuel saw what had happened, he asked Petitioner if he had gone through Keith's pockets. Petitioner said that he had not, so Samuel searched Keith's pockets. Petitioner stated that he then left the building.

Petitioner testified in his own defense. He testified that, on the day of the shooting, he was not scheduled to work, but went to Moore's Truck Rental to discuss unpaid wages with Keith. After discussing their disagreement for several minutes, the discussion became heated. Keith told Petitioner that he should leave the office if he was displeased. Keith then stood up and put his hands inside his jacket. Petitioner testified that he knew Keith carried a handgun and thought Keith was going to shoot him. Petitioner pushed Keith and tried to leave the office. He stumbled, and could not easily get to the door. Petition-er testified that he saw Keith's hands still inside his coat. He thought Keith was going to shoot him, so he shot Keith. Petitioner then left the building. He ran into Samuel, and told Samuel that he had shot Keith.

## IV. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

■ 28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the

state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir.1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) [1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's ap-

plication of clearly established federal law was objectively unreasonable...

[A]n unreasonable application of federal law is different from an incorrect application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11, 120 S.Ct. 1495. With this standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

## V. *Analysis*

### A. *Trial Court's Delay in Deciding Motion for Relief from Judgment*

■ In his first claim for habeas corpus relief, Petitioner argues that his rights to due process and equal protection were violated by the trial court's delay in deciding Petitioner's Motion for Relief from Judgment. A state court's delay in deciding a *direct* appeal may give rise to a due process claim. *Mullins v. Allen*, 134 F.3d 371, 1997 WL 809976 (6th Cir.1997). *See also Harris v. Champion*, 15 F.3d 1538, 1556 (10th Cir.1994); *Allen v. Duckworth*, 6 F.3d 458, 459–60 (7th Cir.1993). A delay in receiving post-conviction review in state court, however, is not a ground for federal habeas corpus relief. *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir.1997) ("[D]elay in receiving a ruling on a discretionary state collateral appeal is not a

---

1. 28 U.S.C. § 2254(e)(1) provides, in pertinent part, that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment

of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."

ground for federal habeas corpus relief.") (citation and internal quotation omitted).

 Federal habeas corpus relief is available only to persons being held in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). It is not a remedy for an alleged violation of state law. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). States "have no obligation to provide" post-conviction review under the Constitution. *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (citation omitted). Since states are not required to provide such review, federal courts have held that challenges to a state's post-conviction procedures are not cognizable as independent claims in habeas corpus proceedings, "unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause." *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir.1996). This is because such claims "address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby v. Dutton*, 794 F.2d 245, 247, 248 (6th Cir.1986). *See also Body v. Watkins*, 51 Fed.Appx. 807, 810, 2002 WL 31323856 (10th Cir.2002) (holding that "state post-conviction delays do not give rise to independent due process claims that are cognizable under § 2254").

The Seventh Circuit Court of Appeals has held that " 'delay in receiving a ruling on a discretionary state collateral appeal is not a ground for federal habeas corpus relief.' " *Jackson*, 112 F.3d at 880, *quoting Montgomery*, 90 F.3d at 1206. The Seventh Circuit reasoned:

> [This decision] rests on the foundation that federal habeas corpus cannot remedy a delay in a state collateral proceeding because such an error has absolutely nothing to do with the reason for a

defendant's confinement. Indeed, if federal habeas corpus could remedy delays in a state post-conviction proceeding, then a state prisoner would be entitled to a release from confinement ... even though his state criminal trial and direct appeals were constitutionally flawless. Habeas corpus does not contemplate such a compensatory remedy—its object is not to make whole someone who has suffered a loss, but to determine whether a person is being confined in violation of basic norms of legality.

*Jackson*, 112 F.3d at 880 (internal quotation omitted).

 Petitioner's due process claim is based upon the state court's delay in deciding his collateral appeal, and does not address the conviction giving rise to his incarceration. "[T]he writ is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings ... because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby*, 794 F.2d at 247. Accordingly, this claim is not cognizable on habeas corpus review.

█ Habeas relief may be appropriate in the context of a challenge to a state's post-conviction review if the state's conduct violated an "independent constitutional right, such as the Equal Protection Clause." *Montgomery*, 90 F.3d at 1206. In this case, Petitioner simply asserts that the delay violated his right to equal protection. He provides no support or explanation for this conclusory allegation. Such a conclusory allegation does not advance a cognizable equal protection claim. *Id.*

## B. *Alleged Ineffective Assistance of Trial Counsel*

Petitioner argues that he is entitled to a writ of habeas corpus because he received

ineffective assistance of trial counsel. Specifically, Petitioner maintains that his attorney was ineffective for (i) failing to investigate potential witnesses, (ii) failing to obtain Wayne County Jail medical records of Petitioner, (iii) failing to file motion for severance, and (iv) failing to file a motion to recuse an allegedly biased trial court judge.

■ In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

■ The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's per-

spective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 694–95, 104 S.Ct. 2052 (internal citations omitted). The Court further explained that, to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 698, 104 S.Ct. 2052. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996), *cert. denied* 520 U.S. 1257, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997).

■ First, Petitioner alleges that his trial attorney was ineffective in failing to investigate potential witnesses presented to him by Petitioner, and failing to call these witnesses at the hearing regarding Petitioner's motion to suppress his confession. Petitioner maintains that these witnesses would have substantiated his claims that his custodial statement was the result of police brutality and coercion. The trial court's opinion denying Petitioner's motion for relief from judgment represents the last reasoned opinion regarding this claim. The trial court held that Petitioner's argu-

ment "merely expresses a conclusion... and fails to present facts tending to show that counsel's performance was deficient or that any such deficiency was prejudicial." *People v. Clark,* slip op. at 3. Similarly, in his habeas petition, Petitioner again asserts conclusory allegations that his attorney was ineffective in failing to present witnesses at the suppression hearing. Such unsupported allegations, without more, are insufficient to establish ineffective assistance of counsel. *See Bowen v. Foltz,* 763 F.2d 191, 194 (6th Cir.1985). Accordingly, Petitioner is not entitled to habeas corpus relief with respect to this claim of ineffective assistance of counsel.

Second, Petitioner alleges that his attorney was ineffective in failing to obtain his medical records from the Wayne County Jail, which, Petitioner argues, would also have substantiated his claim of police brutality. The trial court denied this aspect of Petitioner's ineffective assistance of counsel claim, but failed to offer any explanation for its ruling. If a state court decides a claim, but does not explain its decision, "a federal court must conduct an independent review of the state court's decision. This independent review requires the federal court to 'review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.'" *Morse v. Trippett,* 102 F.Supp.2d 392, 402 (E.D.Mich.2000) (quoting *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir.2000)). Because the state court did not explain its denial of Petitioner's claim that his attorney was ineffective in failing to obtain the medical records, this Court will independently review this claim. *Id.*

Petitioner attaches to his petition copies of three medical reports from the Wayne County Jail, dated November 20, 1990, December 4, 1990, and December 18, 1990. These reports reflect that Petitioner complained of soreness in his groin, neck, right wrist, and right knee. Petitioner's custodial statement and the alleged police brutality occurred on October 27, 1990, approximately three weeks before the first medical report.

Petitioner has failed to show that he suffered any prejudice as a result of his attorney's failure to obtain the Wayne County Jail medical reports. The trial court judge's finding that Petitioner's statement was voluntarily made was based upon credibility determinations. Two police officers testified denying that any beatings occurred during the arrest or at the station. Tr. 2/13/91, pp. 15, 51–52. The trial court found the testimony of the police officers to be more credible than Petitioner's testimony. Tr., 2/13/91, p. 70. Not only did the trial court find that the demeanor of the witnesses supported the police officers' testimony rather than Petitioner's, the trial court also found that Petitioner's conduct after making the statement supported a finding that the statement was voluntary. Specifically, before signing the statement drafted by Sergeant Sanders, Petitioner made several, careful, detailed corrections to the statement. *Id.,* 11–14. The trial court found that this contemporaneous conduct was inconsistent with a person whose statement had not been voluntarily given. *Id.,* 71–72. The Court also notes that the medical reports were somewhat removed in time from the date of Petitioner's custodial statement and, while the medical reports might have provided some support for Petitioner's testimony, a review of those reports indicates that they primarily reflect only Petitioner's own reporting of his symptoms. In light of the trial court's credibility determinations, and the content

of the medical reports, the Court determines that Petitioner has failed to establish a reasonable probability that the trial court would have suppressed his custodial statement if Petitioner's attorney had obtained and submitted the medical reports at the suppression hearing.

 Third, Petitioner argues that his attorney was ineffective in failing to file a motion for severance. The last state court to issue a reasoned opinion regarding this claim, the trial court, in its opinion denying the motion for relief from judgment, held that Petitioner failed to show that his attorney's performance was deficient in this regard, or that any alleged deficiency prejudiced Petitioner. *People v. Clark*, slip op. at 4.

 Petitioner claims that severance was necessary to protect Petitioner from the prejudicial admission of his non-testifying co-defendant's statement to police. Under Michigan law, severance is required only when a defendant shows that it is necessary to avoid prejudice to his substantial rights. M.C.R. 6.121(C). There is no absolute right to a separate trial, and joint trials are strongly favored "in the interest of justice, judicial economy and administration." *People v. Etheridge*, 196 Mich.App. 43, 52, 492 N.W.2d 490 (1992). Severance, under Michigan law, should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *People v. Hana*, 447 Mich. 325, 359–60, 524 N.W.2d 682 (1994).

In Petitioner's bench trial, as discussed more fully below, the trial court judge admitted the non-testifying co-defendant's confession as substantive evidence only of the co-defendant's guilt, not Petitioner's. Given that this evidence was not admitted as substantive evidence of Petitioner's guilt, Petitioner fails to show that, in his case, he was prejudiced by his attorney's failure to move for severance. Therefore, the state court's decision that his attorney was not ineffective was not contrary to or an unreasonable application of Supreme Court precedent.

 Finally, Petitioner argues that his attorney was ineffective in failing to file a motion to recuse the trial court judge who, Petitioner claims, was biased. Petitioner bases his claim of bias on the trial judge's statement that he "glanced through" the preliminary examination transcript. Tr., 4/30/91, p. 6. The last state court to review this claim held that Petitioner failed to show that he was prejudiced by his trial attorney's failure to move for recusal of the trial court judge. *People v. Clark*, No. 90–012204, slip op. at 5.

 A criminal defendant must be afforded a "fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). "To state a due process claim that a judge was biased, [a] defendant must show either that actual bias existed, or that an appearance of bias created a conclusive presumption of actual bias." *United States v. Lowe*, 106 F.3d 1498, 1504 (10th Cir.1997). Petitioner has failed to show that the trial court's brief review of the preliminary examination transcript resulted in any prejudice to him. Thus, the state court's conclusion that Petitioner's attorney was not ineffective in failing to move for the recusal of the trial court judge was not contrary to or an unreasonable application of Supreme Court precedent.

### C. *Alleged Ineffective Assistance of Appellate Counsel*

 Petitioner claims that his appellate attorney was ineffective for failing

to raise the issues raised herein on direct appeal in state court. The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754, 103 S.Ct. 3308. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry,* 908 F.2d 56, 59 (6th Cir.1990). "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir.1999). Petitioner has failed to show that any of the claims presented herein have merit. Consequently, his appellate attorney was not ineffective in failing to present these meritless issues.

### D. *Alleged Violation of Bruton v. United States*

■■■■ Petitioner claims that the trial court erred in admitting into evidence his non-testifying co-defendant's confession. The Michigan Court of Appeals denied this claim on the ground that *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is inapplicable to bench trials. *People v. Clark,* slip op. at 3. In *Bruton,* the Supreme Court held that a defendant is deprived of his Sixth Amendment right of confrontation when a non-testifying co-defendant's facially incriminating statement is introduced at their joint trial, even when the jury is instructed to consider the statement only against the co-defendant. *Id.* at 135–36, 88 S.Ct. 1620. The Supreme Court recognized that "a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." *Id.* at 126, 88 S.Ct. 1620 (internal quotation omitted). The Supreme Court's decision "rested on the belief that regardless of what instructions they received, jurors could not be counted on to blot a co-defendant's confession out of their minds when considering the guilt or innocence of the fellow defendant." *Rogers v. McMackin,* 884 F.2d 252, 254 (6th Cir.1989). It is presumed, however, that judges are capable of separating evidence properly admitted against one defendant from evidence admitted against another. *Id.* at 257. Thus, *Bruton* is inapplicable to bench trials. *Id.* at 252, 257.

The trial court admitted Samuel Moore's confession only as evidence of Samuel Moore's guilt, not Petitioner's. The trial court's findings of fact and verdict also reflect that she did not use Samuel's confession as evidence of Petitioner's guilt. Therefore, the Michigan Court of Appeals decision denying this claim was not contrary to or an unreasonable application of Supreme Court precedent.

### E. *Cumulative Effect of Alleged Errors*

Finally, Petitioner claims that he is entitled to habeas corpus relief because the cumulative effect of the alleged errors deprived him of a fair trial. This Court has determined that the state court's holding that the errors alleged by Petitioner were not errors was not contrary to or an unreasonable application of Supreme Court precedent. Thus, Petitioner's claim that the cumulative effect of the errors alleged herein deprived him of a fair trial so as to

entitle him to habeas corpus relief is meritless.

## VI. *Conclusion*

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA within **TWENTY-ONE (21) DAYS** of filing a Notice of Appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."* (emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **FOURTEEN (14) DAYS** of service of Petitioner's motion for a COA.

### *JUDGMENT*

The above entitled matter having come before the Court on a petition for the writ of habeas corpus, 28 U.S.C. § 2254, the Honorable Paul V. Gadola presiding, the issues having been fully presented, the Court being fully advised in the premises, and a ruling having been duly rendered, **IT IS ORDERED AND ADJUDGED** that Petitioner is entitled to **NO RELIEF** and that this action be, and the same hereby is, **DISMISSED WITH PREJUDICE.**